UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES SHATTUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-01665-CMS |
| | ) | |
| JENNIFER CURRIE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Charles Shattuck brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. Plaintiff applies to proceed in district court without prepayment of fees and costs. Having reviewed the application and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $6.14. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis* in this matter, the Court initially reviews his pleading under 28 U.S.C. § 1915. Based on this review, the Court will issue service on Plaintiff's claims as to Defendants Unknown Adams, Unknown Brown, Brian Davis, Perry Arnold, B. Brown, Justin Conway, Unknown Smith, Caleb Thompson, Unknown Montgomery, Robert E. Lee Ward, Unknown Batreal, Unknown Howder, and Unknown Myler. The Court will dismiss without prejudice Plaintiff's claims brought against Defendants Jennifer Currie, D. Francis, John Hammond, Jared Anselmo, Steven Gettinger, Derik Barker, Richard Crocker, Unknown Barton, and A. Birkner.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action without prepayment of fees and costs is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds

exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.

Plaintiff has submitted his certified inmate account statement from the Missouri Department of Corrections for April 24, 2024 through October 24, 2024. Based on this information, the Court determines his average monthly deposit is $27.50 and his average monthly balance is $30.72, calculated on the tenth of the month. The Court will charge Plaintiff an initial partial filing fee of $6.14, which is twenty percent of his average monthly balance.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief or "'more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a *pro se* complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "[i]f the essence of a claim is discernible, 'the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'" *Barnett v. Short*, 129 F.4th 534, 539 (8th Cir. 2025) (quoting *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015)). That said, even self-represented litigants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

## Background

In a prior case brought by Plaintiff, *Shattuck-Knaebel v. MDOC, et al.*, 4:24-cv-454-HEA (E.D. Mo. filed Mar. 25, 2024) (*Shattuck I*), he alleged facts that provide much of the background for this retaliation case.[1] In *Shattuck I*, Plaintiff alleged he was raped and stabbed by another inmate in March 2023, which Defendant Correctional Officer (CO) Batreal "personally witnessed" and "failed to intervene in." *Id.* at (Doc. 13 at 40–41). Plaintiff asserted that the rape was the fulfillment of a threat by staff from five years earlier. *Id.* at 42–45. Plaintiff filed many grievance documents in September 2023 under the Prison Litigation Reform Act (PLRA). In these grievances, Plaintiff confessed to multiple sexual assaults but also accused many Defendant Corrections Officers ("COs") of misconduct "in order to file a lawsuit." *Id.* at 51–52. After Plaintiff's grievance accusations, many COs were investigated and, according to Plaintiff, at least one was terminated.

---

[1] In *Shattuck I*, Plaintiff self-identified as a transgender woman. Plaintiff has not identified himself as such in this action.

**The Complaint**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights by retaliating against him for his filing PREA complaints.  (Doc. 1 at 1).  Named as Defendants are 24 employees of the Potosi Correctional Center (PCC):  Jennifer Currie; D. Francis; Unknown Adams; Unknown Brown; Brian Davis; Perry Arnold; B. Brown; Justin Conway; Unknown Smith; Caleb Thompson; Unknown Montgomery; Unknown Some Big Guy; Robert E. Lee Ward; John Hammond; Jared Anselmo; Steven Gettinger; Derik Barker; Richard Crocker; Unknown Barton; Unknown Batreal; Unknown Howder; A. Birkner; Unknown Lady; and Unknown Myler.  *Id.* at 2.  Plaintiff sues Jennifer Currie and D. Francis in both their official and individual capacities, and the remaining defendants in their individual capacities only.  *Id.* at 3–12.

On September 25, 2023, Plaintiff confessed in writing to sexually abusing many fellow inmates at PCC.[2]  This confession launched the formal investigation by MDOC's Office of Professional Standards.  Also, Plaintiff states the investigation occurred because he had reported other wrongdoing occurring at PCC.[3]  The remainder of Plaintiff's complaint details several acts of retaliation committed by Defendants.

Plaintiff alleges that, beginning in early October 2023, staff began refusing Plaintiff his meals.  (Doc. 1 at 14).  He states that on days in which B. Brown, J. Conway, Captain Adams, Captain Brown, or Percy Arnold were working, he would be refused at least two meals per day.  *Id.*  Officers Smith, Montgomery, Batreal, Howder, and Thompson also refused Plaintiff meals on

---

[2] *See* PCC 23-1002, *Shattuck I*, 4:24-cv-454-HEA, (Doc. 1-1 at 19–31).

[3] In addition to his PREA complaints, Plaintiff alleges he "told on an offender that had certain COs on the payroll to bring in drugs which commenced an investigation of the Potosi Correctional Center staff."  (Doc. 1 at 13).  It is unclear from the complaint how Plaintiff reported these incidents and to whom.

- 4 -

at least one occasion in October 2023. *Id.* at 14–15. Plaintiff states the COs would come to his cell, give him a cup of juice, and say they were short Plaintiff's religious diet trays. *Id.* at 15. They told Plaintiff they would have to order another tray. *Id.* But later, when Plaintiff inquired, staff would say they were under orders from their superiors to not feed Plaintiff. *Id.* On October 29, 2023, after Plaintiff attempted to attack a CO, Defendants Conway and Thompson fed Plaintiff only "brown bags" for the next four days. *Id.* at 22  The brown bags contained only four slices of bread, four slices of cheese, and a piece of cake. *Id.* Plaintiff attempted to obtain food from other inmates, but Defendant Myler broke Plaintiff's "Cadillac string," the weighted string he used to retrieve the food. *Id.* at 25.

Plaintiff alleges this retaliation also included staff targeting him by labeling him a snitch. He states that during the first week of October 2023, on two occasions, Defendant Conway stood outside Plaintiff's cell, and stated loudly that Plaintiff "told on my neighbor for having a knife in his cell, that I'd told on the case I'm in prison for, and that I'd told on [the walk man] for passing contraband." *Id.* at 15. He states that staff's disclosure of this information created a substantial risk of harm to him at PCC, a maximum security death row institution. *Id.* "It is also the same type of negligent, malicious, sadistic staff misconduct that led to me being stabbed and raped relevant to Claim 2 of this same complaint." *Id.* He states Defendant Conway did this in retaliation for Plaintiff's having listed Conway's name in the PREA claims, which triggered the investigation. *Id.*

In addition, Plaintiff alleges Defendants began denying Plaintiff his legal spend requests. On October 1, 2023, Plaintiff submitted a special legal spend request, which had been pre-approved by the Assistant Warden, requesting to purchase postage for legal mail. *Id.* at 16. Since this request, at least two times per week Plaintiff followed up with Defendant Robert Ward. *Id.* Ward responded on November 7, 2023, stating that FUM Brian Davis denied this legal spend

request, because of his belief that Plaintiff was using postage to file claims against PCC staff. *Id.* On February 1, 7, and 22, 2024, Plaintiff submitted legal spend requests to Defendant Hammond, which were never filed. *Id.* This happened again on March 8, 2024. *Id.* He alleges the actions of Defendants Ward, Davis, and Hammond violate his right to access the courts in retaliation for the underlying PREA reports. *Id.* at 16–17.

In other acts of alleged retaliation, Plaintiff states Defendants actively thwarted him from filing grievance requests at PCC to document their mistreatment. Plaintiff raised these concerns in a grievance to Defendant Ward on October 23, 2023. *Id.* at 17. On November 7, 2023, Ward returned the original filing of the complaint stating it "contained too much." *Id.* Plaintiff refined his compliant and refiled with Ward on November 8, 2023. *Id.* After Plaintiff filed the second, revised complaint, Ward took a two-week leave of absence. *Id.* Plaintiff's housing unit subsequently went through a shuffling of COs. *Id.* On November 29, 2023, Defendant Anselmo conducted a PREA retaliation assessment. *Id.* He informed Plaintiff that Ward had been discharged after he was found to be circumventing the grievance procedures. *Id.*

Plaintiff's grievances pertaining to his retaliation claims were lost. *Id.* He refiled his claims on November 7, 2023, November 9, 2023, and January 8, 2024. *Id.* These subsequent grievances were denied by Defendants Davis, Currie, Gettinger, and Barker. *Id.* at 17–18. The COs gave various procedural reasons for the denials, including that Plaintiff had made duplicate grievances and that the grievances were late. *Id.* at 18. He states the actions of Defendants Ward, Anselmo, Davis, Currie, Gettinger, Basker, and Crocker in thwarting the filing of his grievances and in then denying them violate his right to access the courts. *Id.*

Next, Plaintiff alleges Defendant Adams and Brown told other inmates that Plaintiff had been "writing kites" and filing grievances reporting other offenders' misconduct. *Id.* at 19. Additionally, Defendants Thompson and Conway informed other offenders that Plaintiff named

the Family Values gang in a grievance. *Id.* at 19–20. Plaintiff alleges these incidents subjected him to a high likelihood of attack by fellow inmates and were in retaliation for Defendants being named in Plaintiff's PREA reports. *Id.*

Plaintiff also alleges that he was retaliated against when Defendant Barton refused him showers. *Id.* at 20–21. Plaintiff alleges that he reported through grievances that Defendant Barton's son, Mathew Barton, had a relationship with prisoner Dustin Combs, causing Mathew Barton to be discharged. *Id.* at 20–21. Plaintiff also alleges that Defendant Barton committed unspecified acts of retaliation against him for getting Mathew Barton fired, which led to him filing a further grievance against Defendant Barton, which led to Defendant Barton being investigated. *Id.* at 21. Plaintiff alleges that as retaliation, Defendant Barton "continually and consistently" refused his per-policy showers. *Id.*

Plaintiff alleges more minor acts of retaliation, including COs refusing him nail clippers and a winter blanket, and withholding his mail. *Id.* at 21. Additionally, on November 9, 2023, Defendant Thompson tricked him into not attending his major conduct violation hearing. In front of other offenders, Thompson asked Plaintiff if he was ready for his "snitch meeting." Plaintiff did not understand, and did not go to the meeting. *Id.* at 24. Plaintiff wrote to PCC's on-site PREA Coordinator, D. Francis, twice regarding the retaliation, but nothing was done. *Id.*

As for injuries, Plaintiff asserts that he experienced weight loss due to malnutrition after his meals were withheld. *Id.* at 28. However, most of Plaintiff's alleged injuries are emotional and mental injuries. *Id.* Plaintiff states that he has been ostracized from the inmate population as a result of staff publicly labeling him a snitch, which led to mental and emotional anguish. *Id.* Additionally, his litigation efforts have been hindered because of Defendants' refusal to process grievances and "ultimately successful actions of staff's failure to timely process my PREA complaints of being stabbed and raped which resulted in mental and emotional distress." *Id.*

- 7 -

Plaintiff states this led to suicidal and homicidal tendencies and suicide attempts. *Id.* He suffers from complex PTSD, fear and distrust of correctional staff, and risk of future physical and sexual assault for being labeled a snitch. *Id.*

For relief, Plaintiff seeks actual damages of $50,000 from each Defendant and punitive damages of $125,000 from all Defendants. *Id.* at 30. He also seeks an injunction to permanently keep him in administrative segregation to ensure his safety. *Id.* He specifies that he seeks permanent housing in a single man cell in a protective custody unit. *Id.* Plaintiff notes that he was ultimately transferred to Eastern Reception, Diagnostic and Correctional Center because of staff harassment and animosity at PCC. *Id.* at 31.

## Discussion

### I.    First Amendment

#### A.    Retaliation

##### 1.    *Refusing Meals*

As a general matter, the First Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). To prevail on a First Amendment retaliation claim, a plaintiff "must show: '(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.'" *Lamar v. Payne*, 111 F.4th 902, 907 (8th Cir. 2024) (quoting *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013)). The right to be free from retaliation for availing oneself of the inmate grievance process is clearly established in the Eighth Circuit. *See id.* (quoting *Spencer v. Jackson Cnty.*, 738 F.3d 907, 913 (8th Cir. 2013)); *see also Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (quoting *Nelson v. Shuffman*, 603

F.3d 439, 450 (8th Cir. 2010)) ("Therefore, 'actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983.'").

For purposes of initial review, the Court need only find it plausible that the denial of meals would "chill a prisoner of ordinary firmness" from engaging in constitutionally protected activity, but which "must be a 'but-for cause' of the injury [suffered] . . . ." *Beard v. Falkenrath*, 97 F.4th 1109, 1119 (8th Cir. 2024) (internal quotations omitted) (alteration in original). For a complaint plausibly to allege a First Amendment violation, there must be both "a retaliatory motive and causal connection." *Id.* at 1120.

Plaintiff alleges Defendants refused him his meals, often refusing two meals per day, in retaliation for his filing of prison grievances. (Doc. 1 at 14–15). Plaintiff alleges that the officers began refusing him meals approximately a week after he filed a grievance on September 25, 2023. (Doc. 1 at 14). This is enough to support a causal connection. *Beard*, 97 F.4th at 1121 (quoting *Charleston v. McCarthy*, 8 F.4th 772, 780 (8th Cir. 2021)) (alterations in original) ("[T]emporal proximity alone may establish causation where the time lapse between the protected activity and the adverse ... action was two months or fewer[.]").

The Court finds that Plaintiff has stated a plausible claim of retaliation in violation of the First Amendment arising out of Defendants' refusing him up to two meals per day in October and November 2023. For these reasons, the Court will issue service on Plaintiff's retaliation claims against Defendants B. Brown, J. Conway, Captain Adams, Captain Brown, Perry Arnold, Unknown Smith, Caleb Thompson, Montgomery, Batreal, Howder, and Myler.

### 2. *Denial of Showers*

Plaintiff also alleges that he was retaliated against when Defendant Barton refused him showers. The Eighth Circuit has found that "having multiple showers skipped, possibly for a while" would, in its view, "'chill a person of ordinary firmness from continuing in' their protected

activities, . . . even if it would not on its own 'rise to the level of a constitutional violation,' . . . ."
*Beard*, 97 F.4th at 1120 (internal citations omitted).

Plaintiff alleges that Defendant Barton "continually and continuously" refused to let him take his "per policy showers." (Doc. 1 at 21). Plaintiff alleges a retaliatory motive: that Plaintiff's grievances revealed that Defendant Barton's son, Mathew Barton, had a relationship with prisoner Dustin Combs, causing Mathew Barton to be discharged, and that Defendant Barton committed unspecified acts of retaliation against him for getting Mathew Barton fired, which led to Plaintiff's filing a further grievance against Defendant Barton, which led to an investigation of Defendant Barton. *Id.* at 20–21.

Plaintiff's claim differs from *Beard* and other claims in his complaint in one key aspect: Plaintiff does not specify when these actions occurred. Defendant Barton began to deny Plaintiff showers sometime after both events. (Doc. 1 at 21). But Plaintiff does not allege when and thus does not adequately allege a causal link between the retaliatory motive and the retaliation. *See Beard*, 97 F.4th at 1121 (holding that there was an adequate allegation of a causal connection when shower restrictions started a week after the formal report); *see also id.* (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)) ("'a pattern of antagonism coupled with timing' can establish a causal link"). Thus, Plaintiff does not adequately allege he was retaliated against by Defendant Barton's denying him showers.

### 3.    *De Minimis Acts*

Finally, Plaintiff alleges he was retaliated against when Defendants Barton and A. Birkner refused him nail clippers, withheld mail, and did not provide a winter blanket. (Doc. 1 at 21). While these incidents are purportedly retaliatory, the Court finds they are not sufficiently severe to state a plausible claim of a constitutional violation. *See Walker v. Bowersox*, 526 F.3d 1186, 1190 (8th Cir. 2008). These are not the type of injuries that would chill a person of ordinary

firmness from continuing to engage in protective activity. For these reasons, the Court will dismiss Plaintiff's retaliation claims against Defendants Barton and A. Birkner as they relate to these *de minimis* injuries.

## B.    Denial of Right to Access to the Courts

The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "To state an access to the courts claim, 'a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Holt v. Howard*, 806 F.3d 1129, 1133 (8th Cir. 2015) (quoting *Williams v. Hobbs*, 658 F.3d 842, 851–52 (8th Cir. 2011)). In order to prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *Williams v. Hobbs*, 658 F.3d 842, 851–52 (8th Cir. 2011).

### 1.    *Hindering Grievance Procedures*

The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot bring an action under 42 U.S.C. § 1983 without first exhausting available administrative remedies through the prison grievance process. *See* 42 U.S.C. § 1997e(a). "[T]he PLRA contains, 'its own, textual exception': '[A]n inmate is required to exhaust those, but only those, grievance procedures that are [available, i.e.,] "capable of use" to obtain "some relief for the action complained of."'" *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Moreover, the exhaustion requirement requires proper exhaustion, which entails completion of the

administrative review process in prison in accordance with applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93–103 (2006).

There are three categories of circumstance when an administrative remedy may be "unavailable" for purposes of the PLRA: "(1) when the procedure 'operates as a simple dead end'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) when prison administrators deliberately thwart prisoner attempts to use the process." *Smith*, 75 F.4th at 808 (quoting *Ross*, 578 U.S. at 643–44).

Plaintiff alleges officials at PCC prevented him from exhausting his claims by refusing to file his grievances, losing his grievances, and returning his grievances for perceived procedural violations. (Doc. 1 at 17–18). Plaintiff alleges Defendant Ward committed these violations, and that Ward was later discharged for circumventing the grievance procedures. *Id.* at 17. After Ward was discharged, Plaintiff alleges that he had to refile his claims. *Id.* These subsequent refilings were denied as duplicative or late by Defendant Davis. *Id.* at 17–18. Also, Plaintiff alleges Defendant Davis forged and falsified Plaintiff's grievances. *Id.* at 18.

Because exhaustion is mandatory under the PLRA, and because the grievance process is the only means by which prisoners can exhaust their claims, Plaintiff has stated a plausible claim that Defendants' actions preventing him from timely filing grievances has denied him access to the courts. Notably, several of the grievances related to allegations in this case were denied as untimely. *See Shattuck I*, (Doc. 1-1 at 15, 37–38, 47). It is plausible that Defendants will use Plaintiff's purported failure to exhaust administrative remedies as a defense in this case. Thus, he has plausibly alleged that Defendants have impeded a nonfrivolous legal claim. The Court will issue process on Defendants Ward and Davis on Plaintiff's claims that they denied him access to the courts in violation of the First Amendment.

### 2.    *Denying Legal Spend Requests*

Plaintiff alleges that Defendant John Hammond consistently denied his legal spend requests, which he uses to buy postage for legal filings.  On October 1, 2023, February 1, 2024, February 7, 2024, February 22, 2024, and March 8, 2024, Plaintiff's legal spend requests were denied.  For Plaintiff to state a plausible claim, however, he must plead an actual injury.  In the context of an "access to the courts" claim, an actual injury is "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."  *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008).  In order to prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded.  *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

Plaintiff has not alleged that the denial of his legal spend requests by Defendant Hammond has hindered a meritorious legal claim.  Other than stating that these spend requests are for "purchas[ing] postage supplies for legal purposes," Plaintiff provides no information regarding what nonfrivolous legal claim has been frustrated.  (Doc. 1 at 16).  Notably, Plaintiff has four pending cases in this Court, and he communicates frequently by mail with the Court.  Because Plaintiff has not alleged an actual injury arising out of Defendant Hammond's denial of his legal spend requests, the Court finds Plaintiff has not stated a plausible claim.  These allegations will be dismissed for failure to state a claim.

## II.    <u>Eighth Amendment—Cruel and Unusual Punishment</u>

### A.    **Denial of Meals**

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016) (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009)) ("'The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those

- 13 -

convicted of crimes.'").  "The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In addition to his retaliation claim, Plaintiff's allegations that Defendants denied him meals state a plausible substantive claim under the Eighth Amendment. To allege inadequate nutrition as a violation of the Eighth Amendment, Plaintiff must allege "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food[,]" including losing weight. *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016) (citing cases); *see also Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have a right to nutritionally adequate food).  Additionally, to state a constitutional claim, Plaintiff must allege "that the defendants were deliberately indifferent to his nutritional needs, that is, 'failed to act despite … knowledge of a substantial risk of serious harm.'" *Ingrassia*, 825 F.3d at 897 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff alleges that over the course of many days in October and November 2023, Defendants B. Brown, J. Conway, Captain Adams, Captain Brown, Perry Arnold, Smith, Caleb Thompson, Montgomery, Batreal, Howder, and Myler refused him his meals, often refusing two meals per day.  (Doc. 1 at 14–15, 21–23). Additionally, Plaintiff alleges that he lost weight as a result of being denied meals. *Id.* at 28.  Liberally construed, this is a plausible claim that Defendants' failure to provide Plaintiff multiple meals over a month-long period violates the Eighth Amendment prohibition of cruel and unusual punishment.

### B.    Labeling as a Snitch

The Eighth Circuit has held that it is clearly established that labeling an inmate a snitch unreasonably subjects the inmate to a substantial risk of harm from other inmates and violates the

Eighth Amendment.  *Reeves v. King*, 774 F.3d 430, 432 (8th Cir. 2014) (discussing *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008)).

Plaintiff alleges that Defendant Conway stood outside his cell and stated out loud that he had "'told on [his] neighbor for having a knife in his cell,'" that he had snitched in his original criminal case, "'and that [he had] told on walkmen [sic] for passing contraband'." (Doc. 1 at 15). Plaintiff also alleges that Defendants Conway and Caleb Thompson told another inmate that he was a snitch. *Id.* at 20. Plaintiff alleges Defendant Adams told other inmates that Plaintiff had been "writing kites" and filing grievances reporting other offenders' misconduct. *Id.* at 19. Finally, Plaintiff alleges that Defendant Brown violated his duty by labeling him a snitch to other inmates, mentioning that he had "flown kites" about a former "walkman,"[4] Michael D. Taylor, for allegedly passing contraband. (Doc. 1 at 19).

Therefore, Plaintiff has stated a plausible claim that Defendants Conway, Thompson, Adams, and Brown violated their duty to protect him from harm by labeling him a snitch to other inmates. The Court will issue process on these Defendants for allegedly unreasonably subjecting Plaintiff to threat of substantial harm in violation of the Eighth Amendment.

## III.   Defendants Jennifer Currie, D. Francis, Jared Anselmo, Steven Gettinger, Derik Barker, and Richard Crocker

Plaintiff's allegations against Defendants Currie, Anselmo, Gettinger, Barker, and Crocker relate to the grievance process. *See* (Doc. 1 at 17–18, 25–26). Plaintiff states these officers denied Plaintiff's grievances as being filed out of time. *Id.* at 17–18. Refusing a grievance as being filed out of time, however, is not a constitutional violation.  The alleged constitutional violation occurred when Defendant Ward refused to file Plaintiff's grievances timely, lost his grievances, or returned them with purported procedural defects. Plaintiff's cause of action for denial of access

---

[4] "Walkmen are inmates charged with duties such as sweeping the walk in a unit of the prison." *Reece v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995).

to the Courts is against Defendant Ward, not the Defendants that denied his subsequent untimely grievances. For this reason, Plaintiff cannot state a claim against Defendants Currie, Anselmo, Gettinger, Barker, and Crocker, and these Defendants will be dismissed.

As to Plaintiff's allegations against D. Francis, the Deputy Warden at PCC, Plaintiff states that he wrote twice to Francis regarding the challenges he faced with Defendant Ward in filing his grievances. *See* (Doc. 1 at 25). He states he received no response. Vicarious liability is inapplicable in 42 U.S.C. § 1983 suits. *See Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). Rather, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020). It is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). Here, Plaintiff does not allege D. Francis directly participated in any constitutional violation, nor does he allege any failure to train caused the alleged violation. For these reasons, Plaintiff's claims against Defendant D. Francis fail to state a claim upon which relief may be granted.

## IV.    **Official-Capacity Claims**

Plaintiff brings his claims against Defendants Jennifer Currie (Assistant Warden, PCC) and D. Francis (Deputy Warden, PCC) in both their official and individual capacities. In an official-capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is

actually a suit against the entity for which the official is an agent"). To prevail on an official-capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

Plaintiff's official-capacity claims against the Missouri Department of Corrections employees are claims against their employer. That is, Plaintiff's official-capacity claims against Currie and Francis are actually claims against the State of Missouri, of which the Department of Corrections is a department. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008); *see also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). "Neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"). Therefore, to the extent Plaintiff seeks monetary damages, his official-capacity claims against the Department of Corrections employees must be dismissed.

To the extent Plaintiff seeks prospective injunctive relief, his claims still fail. To prevail on an official-capacity claim, Plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Plaintiff has not alleged any constitutional violations stemming from an official policy, unofficial custom, or failure to train. For these reasons, Plaintiff's official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

**V.    Motion to Appoint Counsel**

Finally, Plaintiff has filed a motion to appoint counsel.  In civil cases, a *pro se* litigant does not have a constitutional or statutory right to appointed counsel.  *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013).  Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).  When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the *pro se* litigant to investigate the facts, the existence of conflicting testimony, and the ability of the *pro se* litigant to present his or her claim.  *Phillips v. Jasper Cty Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted.  Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**.  (Doc. 2)

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $6.14 within **30 days** of the date of this order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process on Plaintiff's complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney

General's Office, as to Defendants Unknown Adams, Unknown Brown, Brian Davis, Perry Arnold, B. Brown, Justin Conway, Unknown Smith, Caleb Thompson, Unknown Montgomery, Robert E. Lee Ward, Unknown Batreal, Unknown Howder, and Unknown Myler in their individual capacities.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Jennifer Currie, D. Francis, John Hammond, Jared Anselmo, Steven Gettinger, Derik Barker, Richard Crocker, Unknown Barton, and A. Birkner are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiffs claims against Defendants Jennifer Currie and D. Francis brought in their official capacities are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel is **DENIED without prejudice**.  (Doc. 3)

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel, which seeks to compel his certified account statement, is **DENIED as moot**.  (Doc. 4)

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this <u>27th</u> day of October, 2025.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE